RICHARD BRIDGEFORTH,

_Plaintiff_,

v.

JOHN E. POTTER,
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

_Defendant_.

CIVIL ACTION NO. 3:10-CV-00030

MEMORANDUM OPINION

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

By counsel, plaintiff filed a complaint alleging claims of race and age discrimination against his employer, the United States Postal Service ("USPS"). Before me now are defendant's motions for summary judgment and to dismiss the complaint for lack of jurisdiction. The motions have been briefed and argued and are ripe for disposition. For the reasons stated herein, I will grant the motion to dismiss; furthermore, given the evidence presented in support of the pending motions and at the hearings in this matter, I will, in the alternative, grant the motion for summary judgment.[1, 2]

## I.

Plaintiff is employed by the United States Postal Service ("USPS") on Seminole Trail in

---

[1] The 24-page, single-spaced complaint repeats conclusions of law as factual allegations. The complaint could be dismissed under Rule 8, for failing to provide a "short and plain statement of the claim." Defendant has not so moved.

[2] The day after filing the instant complaint, plaintiff filed a a "motion for temporary restraining order and preliminary injunction." _See_ docket no. 2. On June 28, 2010, I conducted a hearing on the motion, which I denied at the conclusion of the hearing; thereafter, on July 2, 2010, I issued an opinion and order memorializing my reasons for denying the motion.

Charlottesville, and has been employed with the USPS for at least thirty-three years. His job as a "nixie clerk" (a postal clerk who tracks dead letters) in Charlottesville has been eliminated and consolidated to other locations, or assigned to more senior personnel. Plaintiff has been offered and assigned other work with the USPS. Plaintiff has not been discharged, nor has he experienced any loss in pay or benefits. Nonetheless, plaintiff's counsel has asserted that, due to age and race discrimination, he is being forced out of the nixie clerk position, which is allegedly more "prestigious," and plaintiff contends that, if his nixie clerk position is eliminated, he will be "forced to bid on another more undesirable job," which will result in "irreparable injury" from working in an "unsafe environment where [his] hearing and sight will be permanently damaged. . . ."

Plaintiff states that, in November 2008, he returned from a period of annual leave to find that he had been moved out of his quiet, private office, into another "enclosed area" near the loading dock, where he is exposed periodically during the day to the noise of other USPS personnel sorting and loading mail, yet he complains that this location is "isolated." Plaintiff contends that the new work area is unsafe and "a little bit exposed to the elements," and that the move was motivated by race- and age-based animus. However, the government presented evidence that plaintiff was moved from the former office space, which he alone occupied, because there are fewer nixie clerks, given that the position is being eliminated, and the office was converted to the use of union representatives. Furthermore, the evidence indicates that plaintiff is not exposed to the elements, other than the occasional opening of doors, and that the intermittent noise of which he complains (from "traffic at that part of the post office") is no greater than that to which all the other employees in that area of the post office are periodically exposed. Plaintiff also complains that he formerly had insufficient light in the new work area,

but concedes that the lighting issue was resolved after he complained to his union. And, to the extent plaintiff complains of having been audited for five days, the government's evidence indicates that such evaluations are performed "throughout the post office," and that the purpose of the audit is the USPS's ongoing cost-saving measures, which necessitates studying employees' jobs, and evaluating the options of consolidating and removing positions.[3]

Insofar as he claims that his new work area is "unsafe," or "a little bit exposed to the elements," the government's evidence tends to disprove these allegations, as did his own testimony. Regarding plaintiff's employment, plaintiff's counsel acknowledged that plaintiff "is still doing the same duties, he still has the same responsibilities," and the evidence introduced at the hearings in this matter indicates that plaintiff will continue to work in Charlottesville, that he ranks high in seniority at the Seminole Trail post office, that he still earns the same amount of money, and that the terms and benefits of his employment remain unchanged, save for his position having been eliminated and his being placed in an "unassigned regular" category.[4]

## II.

### A.

Count One alleges a Title VII race discrimination and harassment claim on the basis of work conditions. Plaintiff asserts, *inter alia*, that "Defendants wrongfully and without cause [*sic*] Plaintiff's Nixie Clerk position to be eliminated"; that "Defendants wrongfully and without

---

[3] Plaintiff's counsel asserted that plaintiff has received a number of "harassing" letters from the USPS, stating "things that are just crazy." Counsel presented one of the letters as evidence. The letter is a routine "Employee Notification," dated May 19, 2010, informing plaintiff that his position was being abolished, effective May 22, 2010, and that he would "become an unassigned regular on that date and [his] hours and days off will remain the same as [his] previous assignment."

[4] The evidence also indicates that plaintiff was not the most senior person working as a nixie clerk at the Seminole Trail post office, and further suggests that all personnel reductions and reassignments at the post office have been regular and routine.

cause denied Plaintiff [*sic*] and interfered with Plaintiff's terms and conditions of employment by making Plaintiff to work [*sic*] in a small, unsecured open area, when Plaintiff needed a closed, secured are in which to work"; that "Defendants wrongfully and without cause made Plaintiff work in unlighted and cold conditions, in attempts to prevent Plaintiff from working"; and that

> Defendants wrongfully and without cause violated Plaintiff's EEO and privacy rights when USPS management conspired to open Plaintiff's work desk and take out his personal possessions, while he was away from the job. This was done without Plaintiff's knowledge and consent. according to the definition of hostile work environment[.]

(Verbatim quote.) Even though plaintiff has not been discharged and his pay has not changed in any way, he asserts that he "has suffered great hardship and severe emotional distress entitling him to his back and unpaid wages" and "lost retirement benefits."

Count Two alleges a Title VII violation on the basis of "race and opportunity for advancement." Plaintiff simply asserts, devoid of any other factual enhancement, that "Defendant discriminated against the Plaintiff by refusing to provide the Plaintiff an equal opportunity to fairly compete for advancement to a management position because of his race. . . ."

Count Three alleges a Title VII violation on the basis of "race retaliation." He asserts that "Defendant demonstrated retaliation and hostility on the part of the Post Office for filing discrimination complaint [*sic*]." Plaintiff basically asserts that the defendant failed to timely respond to his complaints and failed to keep him apprised of the status of investigations into his complaints.

Count Four alleges a "violation of the ADEA" (the "Age Discrimination in Employment Act") on the basis of "intentional discrimination." As with the other claims, he recites

conclusions of law as through they are factual assertions.  Plaintiff does no state any specific conduct that could constitute any adverse action taken against him on account of his age.

Count Five alleges an ADEA violation on the basis of "retaliation."  Although he submits no facts to support the assertion, he claims that he "has been retaliated against for complaining of the discriminatory treatment received from the United States Postal Service."

Count Six alleges an ADEA violation on the basis of "disparate impact."  He alleges that "Defendants have . . . maintained policies and procedures which when applied, [*sic*] had a discriminatory and disparate impact on older employees, including Plaintiff."

Count Seven alleges a violation of the Civil Rights Act of 1991, on the basis of "loss of value and enjoyment of human life" and "hedonic damages."  Plaintiff states that he "has been targeted, harassed, and otherwise had the terms and conditions of his employment altered because of intentional race discrimination."  Otherwise the count asserts conclusions of law.

Count Eight alleges a "VIOLATION OF CIVIL RIGHTS ACT OF 1981 AND 1983 VIOLATIONS (Race)."  Plaintiff adds that "[t]his is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiff by the Civil Rigths Act of 1871, 42 U.S.C. §§ 1981 and 1983, as amended by the Civil Rights Act of 1991."  Plaintiff asserts that "[t]he actions of defendant in eliminating [Plaintiff's] job title and subsequent harassment were racially motivated," and that "[w]hite employees of defendant have not been treated as harshly as Plaintiff."  The count otherwise asserts conclusions of law.

Count Nine alleges a violation of the Virginia Human Rights Act on the basis of age.  The allegations are conclusory, at best.  Plaintiff adds that, "[a]s a direct and proximate result of said acts., Plaintiff has been damaged by this physically, emotionally and economically in that he has sustained damage to his psyche, stress and other physical pressure, and has lost pay as a result of

Defendants' attempts to abolish his position unjustifiably."

Count Ten alleges a violation of the Virginia Human Rights Act on the basis of "retaliation." Again, the allegations are conclusory, at best, and plaintiff again contends that, in spite of never having lost a day of employment or of pay, he "has lost pay. . . ."

Count Eleven alleges a violation of plaintiff's Fourth Amendment rights. He asserts that his property was illegally searched and seized.

Count Twelve alleges a violation of the Thirteenth Amendment, which abolished slavery and involuntary servitude, except as punishment for a crime. This is clearly a baseless and frivolous assertion. In any event, plaintiff asserts conclusions of law without any factual support.

Count Thirteen alleges a violation of plaintiff's "common law" "right to privacy." Plaintiff asserts that "[t]he actions of Defendant, its agents and employees constitute an invasion of Plaintiff's right to privacy."

Count Fourteen alleges "wrongful termination of position" and "breach of implied covenant of good faith and fair dealing."

Count Fifteen alleges "misrepresentation, fraud and deceit."

Count Sixteen alleges "INTENTIONAL, IMPROPER INTERFERNENCE [*sic*] WITH CONTRACTUAL RELATIONSHIP."

Count Seventeen alleges intentional infliction of emotional distress.

"COUNT EIGHTTEEN" [*sic*] alleges "negligent infliction of emotional distress."

"COUNT NINTEEN" [*sic*] alleges "promissory estoppel."

"COUNT TWENTEY" [*sic*] alleges fraudulent inducement.

Count Twenty-One alleges "negligent breach of contractual duty."

Count Twenty-Two alleges "negligent misrepresentation."

There is a second "COUNT TWENTY-TWO," requesting "injunctive relief and damages" for "breach of employment contract."

**B.**

Documents submitted in support of defendant's motions provide the following background.

On November 24, 2008, plaintiff signed a postal service Form 2564A, "Information for Pre-Complaint Counseling," in which he alleged age and race discrimination. On February 25, 2009, plaintiff signed a postal service Form 2565, "EEO Complaint of Discrimination in the Postal Service." In the EEO [or "Equal Employment Opportunity"] complaint, the plaintiff alleged two types of discrimination, race (black) and age (over age 40). The EEO complaint stated that, at the time of the alleged discrimination, plaintiff was working as a nixie mail review clerk at the main post office on Seminole Trail in Charlottesville, and alleged that, on November 17, 2008, plaintiff was the victim of the following incident of discrimination:

> I returned to work after annual leave in November to find my desk removed from my office and displaced on the far end of the installation in a dim-lit area near the dock. I also found my desk had been broken into and contents removed and other threwn [*sic*] into boxes in the most haphazard way. I can never remember any employee being treated in such an outwardly disrespectful manner.

On March 13, 2009, the Postal Service's EEO Dispute Resolution Specialist issued an "EEO Dispute Resolution Specialist's (DRS) Inquiry Report," stamped as "received" on March 16, 2009, and stating, in pertinent part:

> The Counselee alleged discrimination based on race (African American), and age (40+ DOB: XXXXXX), when on November 17, 2008, he became aware that he was removed from his office and was relocated to a small dimly lit area to the far side of the building near the dock entrance.

-7-

\* \* \*

The Counselee requests to be returned to his office and resolution to his duties post haste.

\* \* \*

The counselee requested EEO Counseling on November 17, 2008, and an initial interview with the counselee was conducted on December 14, 2008.  The counselee elected to participate in the agency's alternative dispute resolution program known as REDRESS, and the mediation session was held on December 23, 2008.  The counselee's concerns were not resolved during the mediation.

The counselee stated after he returned from leave he was removed from his office and was relocated to a small dimly lit area to the far side of the building near the dock entrance.  He stated that his desk was broken into and all the contents were removed.  Counselee stated that he contents that were removed from his desk were notes and service related items which made his assignments easier.  He also stated that the area [where] he is working now is inadequate for him to perform his duties.  Mr. Richard Bridgeforth stated that no other employees have returned from leave to find themselves displaced.  He also stated that the nixie clerks have always worked in the same office but now when two black employees inhabit the office, one has to be removed to a dour location.

Supervisor Keith Smarte denied discrimination against the counselee.  Management stated that a review of this matter reveals that Mr. Richard Bridgeforth's work location was relocated from a back office to the forwarding area out on the work floor.  Acting Plant Manager Matthew Hoffman stated that his previous work location was 357 feet from where his work area exists (the forwarding area).  He stated that based upon that, Mr. Bridgeforth needed to be centralized because it was an incredible waste of time and money.  Management thought it was time to revamp the operation in order to manage their employees.  Management stated that when work floor space was at a premium his operation was moved off the work floor because the floor space was needed for machines, equipment and operations.  Management stated that now that there have been some changes to the work floor layout; [*sic*] his job is centrally located in one location on the work floor.  Management stated that Mr. Bridgeforth expressed a concern about the lighting and two lights were installed at his desk.  He stated that to this day, even though he has the two lights installed at his desk he does not turn them on.

\* \* \*

Management's response was received from Supervisor Keith Smarte and Acting Plant Manager Matthew Hoffman.  Both management officials attempted to resolve Mr. Richard Bridgeforth's issue during mediation but he decline [*sic*] their offer.

On March 23, 2009, Sheila E. Edmunds, a Postal Service EEO Services Analyst, issued a summary "Dismissal of Formal EEO Complaint" on the ground that plaintiff's formal complaint of February 25, 2009, had failed to state a claim. Plaintiff appealed that dismissal to the Office of Federal Operations ("OFO") at the Equal Employment Opportunity Commission ("EEOC"). On June 15, 2010, before the OFO-EEOC had decided plaintiff's appeal, he filed the instant lawsuit. By decision dated June 18, 2010, the OFO-EEOC found that the postal service EEO acted improperly by summarily dismissing plaintiff's formal complaint, and remanded the case back to the postal service EEO for an investigation and a hearing on plaintiff's complaint. The OFO's decision further informed plaintiff that he could file suit based on his EEO complaint in federal court, and that filing such action would terminate any further processing of his complaint by the postal service EEO.

Plaintiff filed this action, naming the John E. Potter, postmaster general of the United States Postal Service, as defendant, and the postal service EEO took no further action on his complaint.

### III.

### A.

A defendant can challenge subject matter jurisdiction on a factual or facial basis. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Defendant alleges that, on its face, the complaint fails to allege facts upon which subject matter jurisdiction can be found for Counts Eight, Nine, Ten, Eleven, Twelve and Fourteen. When lodging a facial challenge of this sort, a "defendant may contend 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Id*. (quoting *Adams*, 697 F.2d at 1219). In this circumstance, "the facts alleged in the complaint are

assumed to be true and the plaintiff, in effect, is offered the same procedural protection as he would receive under a Rule 12(b)(6) consideration."[5] *Adams*, 697 F.2d at 1219.

Defendant also challenges the truth of plaintiff's factual assertions as the basis of subject matter jurisdiction for Counts One through Seven, Thirteen, Fifteen through Twenty-One, and those counts of the complaint listed as Counts Twenty-Two. When a defendant contends "that the jurisdictional allegations of the complaint [are] not true," *id.*, "the plaintiff . . . is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, '[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,'" *Kerns*, 585 F.3d at 192 (quoting *Adams*, *supra*). Defendant further asserts that, as to Counts Thirteen, Fifteen, Sixteen, Nineteen, Twenty, Twenty-One, and the Counts Twenty-Two, the court lacks subject matter jurisdiction on both facial and factual bases.

## B.

Counts One through Six allege claims for which plaintiff has not exhausted his administrative remedies, as required to pursue claims under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act

---

[5] A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted, and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted). However, I must apply the pleading standard as refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009); the refined pleading standard requires that a plaintiff must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. And, although I must "accept as true the factual allegations in the . . . complaint," *Hemi Group, LLC v. City of New York*, ___ U.S. ___, ___, 130 S. Ct. 983, 986-87 (2010) (citation omitted), that tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949, (citing *Twombly*, 550 U.S. at 555).

of 1964, 42 U.S.C. §§ 2000e *et seq.*,[6] and thus will be dismissed for lack of a factual basis for subject matter jurisdiction.

The complaint asserts Title VII claims of retaliation and denial of opportunity for advancement, and ADEA claims of retaliation and disparate impact. Count One mentions the allegations put forth in plaintiff's EEO formal complaint, but the total of the allegations of the complaint itself put forth retaliation and disparate impact claims that plaintiff did not plead in his EEO complaint. The allegations of Count Four put forth ADEA claims of retaliation and disparate impact that plaintiff did not allege in his EEO complaint, and the claims in Count Four are not materially distinct from the allegations in Counts Five and Six.

As previously recounted, plaintiff filed an EEO administrative formal complaint on February 25, 2009, generally alleging that he was subjected to race and age discrimination. In sum, he alleges that, after he returned from a period of leave, he had been removed from his prior office to a dimly lit area near a loading dock entrance, and that his desk had been broken into, and the contents had been removed and replaced sloppily into the desk. His formal EEO complaint is a short and very general description of alleged discrimination on November 17, 2008. The formal EEO complaint does not include any mention of denial of opportunity for advancement, retaliation, or disparate impact, and no EEO investigation for those claims could reasonably be expected to follow from the general discrimination claim asserted in his EEO complaint.

Before filing suit under the ADEA and Title VII, a plaintiff is required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *See* 29 U.S.C. §

---

[6] Section 717 of Title VII, 42 U.S.C. § 2000e-16, and 29 C.F.R. Part 1614 apply to federal employees.

626(d); 42 U.S.C. § 2000e-56(e)(1); *see also Jones v. Calvert Group, Ltd*, 551 F.3d 297, 300 (4th Cir. 2009). A plaintiff's failure to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction over a Title VII claim, s*ee Davis v. North Carolina Dep't. of Corrections*, 48 F.3d. 134, 138-40 (4th Cir. 1995) (removal of Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction), and the same is true of claims made under the ADEA, *see Vance v. Whirlpool Corp.*, 707 F.2d 483, 486-89 (4th Cir. 1983) (holding that plaintiff's failure to exhaust administrative remedies, which required a 60-day wait after filing federal administrative charge before bringing suit in federal district court, deprived the court of subject matter jurisdiction).

"The purpose of the exhaustion requirement is to ensure 'that the employer is put on notice of the alleged violations so that the matter can be resolved out of court[,] if possible." *Westmoreland v. Prince George's County, Md.*, 2010 WL 3369169 at *4 (D. Md. August 23, 2010) (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005) (citation omitted)). The charge must be in writing and verified under oath or affirmed under penalty of perjury. *Edelman v. Lynchburg College*, 535 U.S. 106, 112 (2002). The charge must be "'sufficiently precise to identify the parties and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Institution*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. 1601.12(b)). The scope of the plaintiff's federal law suit is determined by the contents of the plaintiff's initial charge in his administrative EEO complaint. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII law suit." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, a

claim in federal district court litigation will generally be barred if the EEO and EEOC charge alleges discrimination on one basis and the formal litigation claim alleges discrimination on a separate basis. *See id.*; *see also Bryant*, 288 F.3d at 132-33 ("the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination").

Plaintiff failed to exhaust his administrative remedies as to his Title VII and ADEA claims of retaliation and disparate impact, given that his EEO complaint was specific to one incident of alleged discrimination, and cannot be reasonably said to include claims of disparate impact or retaliation. Nor would a reasonable investigation following the allegations in his EEO complaint likely discover claims of retaliation and disparate impact. *See, e.g., Diersen v. Walker*, 117 Fed. Appx. 463 (7th Cir. 2004) (plaintiff's disparate impact claim under the ADEA was not administratively exhausted because his EEOC charge claiming disparate treatment was conceptually and factually distinct); *Woodman v. WWOR-TV*, 293 F. Supp. 2d 381 (S. D. N.Y. 2003) (plaintiff asserted in federal court that her former employer promulgated facially neutral practices that had the effect of disadvantaging older employees, but the claim was not reasonably related to the disparate treatment administrative claim that the employer was motivated by illicit consideration of age, and thus plaintiff failed to exhaust her administrative remedies regarding her disparate impact age discrimination claim); *McKinney v. Eastman Kodak Co.*, 975 Fed. Supp. 462 (W. D. N.Y. 1997) (disparate impact age discrimination claims were not reasonably related to an administrative claim alleging disparate treatment age discrimination and retaliatory discharge). Accordingly, Counts One through Six must be dismissed for lack of subject matter jurisdiction.

## C.

Count Seven is a claim for Title VII damages, seeking an award for "loss of value and enjoyment of human life" and "hedonic damages"[7] for defendant's alleged violation of the Civil Rights Act of 1991, which broadened the waiver of sovereign immunity under Title VII to provide for an award of compensatory damages against the United States when there has been a finding of discrimination or retaliation in employment. *See* 42 U.S.C. § 1981a. However, plaintiff did not present the claims asserted in Count Seven in his administrative EEO complaint, and such claims are not reasonably deduced from the EEO complaint; accordingly, as explained in the previous section of this opinion, the claims in Count VII fail for lack of subject matter jurisdiction.

## D.

Counts Thirteen, Fifteen, Sixteen, Seventeen, Eighteen, Twenty, Twenty-One, and the first Count Twenty-Two allege that various torts were committed by the U.S. Postal Service and U.S. Postmaster General John E. Potter in his official capacity. *See* 5 U.S.C. § 703 (the proper defendant in an action brought against a government agency is "the United States, the agency by its proper title, or the appropriate officer"); 42 U.S.C. § 2000e-16(c) (a federal employee bringing a discrimination claim may name as a defendant only the head of the department, agency, or unit). Accordingly, plaintiff's tort claims must be treated as suing the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. *See Norris v. Principi*, 254 F. Supp. 2d 883, 888 (S.D. Ohio 2003) (suing defendant in official capacity effects a lawsuit against the United States) (citations omitted); *see also Dolan v. United*

---

[7] "Loss of enjoyment of life" damages are often referred to as "hedonic damages." *See, e.g., Boan v. Blackwell*, 343 S.C. 498 (2001).

*States Postal Service*, 546 U.S. 481, 484 (2006) (the Postal Reorganization Act waives the Postal Service's immunity by giving it the power to sue and be sued in its official name, and also provides that the FTCA shall apply to tort claims arising out of activities of the Postal Service) (citations omitted).

Defendant raises facial and factual challenges to the court's subject matter jurisdiction on these counts, narrowly focusing on a threshold question whether plaintiff filed an administrative claim with the postal service that was in any way intertwined with or determinative of the merits of plaintiff's factual allegations of tort liability in these counts. Accordingly, a motion under Rule 12(b)(1) is proper. *Kerns v. United States*, 585 F.3d 187, 196 (4th Cir. 2009).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). In short, it is well-established that the United States is immune from suit unless it waives its sovereign immunity. *Id.* Without such a waiver, the court does not have subject matter jurisdiction over an action against the United States. *Id.*; *Williams v. United States*, 50 F. 3d 299, 304 (4th Cir. 1995). The court must strictly construe any waiver of sovereign immunity in favor of the sovereign. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). "For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." *Id.* at 651. When ruling on a motion to dismiss under Rule 12(b)(1), the court may consider exhibits outside the pleadings to decide factual issues regarding subject matter jurisdiction. *Williams*, 50 F.3d at 304.

The FTCA provides a limited waiver of sovereign immunity for tort suits against the United States for acts of federal employees acting within the scope of their employment. *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). However, as a mandatory jurisdictional prerequisite to filing suit, the FTCA requires that, within two years of each of the

complained-of injuries, the plaintiff must file with the postal service an administrative claim that carefully adheres to the administrative requirements set forth in the FTCA.  *See* 28 U.S.C. §2675(a); *Kokotis* at 278.  This administrative claim requirement "must be scrupulously observed" and it "is jurisdictional and may not be waived."  *Kokotis* at 278 (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)).  The plaintiff makes no statement in his complaint that he has filed the mandated administrative claim for the torts alleged in these counts.  The postal service asserts that it has not received any such administrative claim from the plaintiff, and submits evidence in support of that assertion.

Accordingly, because plaintiff has not complied with the administrative claim requirements mandated in 28 U.S.C. § 2675(a), the United States has not waived sovereign immunity regarding these counts, and thus there is no factual basis for subject matter jurisdiction.[8]

## E.

Count Thirteen alleges a violation of plaintiff's common law right to privacy.  However, Virginia does not recognize a common law right to privacy; rather, Virginia recognizes only a limited statutory right to privacy, contained at Virginia Code §8.01-40(A), for commercial misappropriation of a person's name or likeness.  *See, e.g., Booker v. Dominion Virginia Power, et. al.*, 2010 WL 1848474 *6, *11 (E.D. Va. May 7, 2010); *Town & Country properties, Inc. v. Riggins*, 249 Va.387, 394 (1995).  Plaintiff does not allege commercial misappropriation of his name or likeness, and thus this count fails under Virginia law, and fails on its face to invoke this

---

[8] Additionally, the claims in Counts Fifteen, Sixteen, Twenty, Twenty-One, and the first Count Twenty-Two fail to survive a facial challenge to subject matter jurisdiction, given that each of these counts alleges a tort for which the United States has not waived sovereign immunity.  *See* 28 U.S.C. sc 2680(h).

court's subject matter jurisdiction.

Nor is there a general federal Constitutional right of privacy. *Newhard v. Borders*, 649 F. Supp. 2d 440, 447 n. 5 (W.D. Va. 2009). Rather, federal law only recognizes "particular 'zones of privacy' . . . as meriting protection includ[ing] 'the right to be free from unreasonable search and seizure, and the right to make personal decisions regarding marriage, contraception, procreation, and family relationships.'" *Id.* (quoting *Carroll v. Parks*, 755 F.2d 1455, 1456-57 (11th Cir. 1985) (citing *Paul v. Davis*, 424 U.S. 693, 712-14 (1976)). Plaintiff's claim that his right to privacy was violated does not fall within these "zones of privacy," and thus fails on its face to invoke this court's subject matter jurisdiction.

### F.

Counts Nine and Ten allege that defendant violated the Virginia Human Rights Act ("VHRA"). Title VII of the Civil Rights Act of 1964 provides the exclusive judicial remedy for claims of discrimination in federal employment. *Brown v. Gen. Services Admin.*, 425 U.S. 820, 834 (1976) ("[§] 717 of the Civil Rights Act of 1964 . . . provides the exclusive judicial remedy for claims of discrimination in federal employment").[9] Accordingly, these counts must be dismissed, as they fail on a facial basis to invoke this court's subject matter jurisdiction.[10]

---

[9] In 1972, Congress amended Title VII of the Civil Rights Act of 1964 to waive sovereign immunity by including § 717, which sets forth a process for addressing claims of discrimination by federal employees. *See* Title 42 U.S.C. § 2000e-16. Originally, § 717 provided federal employees with only equitable relief. In 1991, Congress broadened the waiver of sovereign immunity by amending Title VII to provide for the additional remedy of compensatory damages to federal employees. *See* Civil Rights Act of 1991; Pub. L. No. 102-166; 105 Stat. 1071, 1072-73; 42 U.S.C. § 1981a.

[10] Clearly, the VHRA is simply irrelevant here. Leaving aside for a moment that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment, the VHRA limits a plaintiff/employee's right of action to those defendants who employ "more than five but less than fifteen" employees. *See* Virginia Code § 40.1-51.2:1. The U.S. Postal Service employs more than fifteen employees. Additionally, the VHRA requires, as a prerequisite to filing suit, that a plaintiff seeking redress under the

(continued...)

**G.**

Count Eight alleges that defendant violated 42 U.S.C. §§ 1981 and 1983, and the illegal search claim in Count Eleven alleges a violation of § 1983. Both of these counts fail on a facial basis to invoke this court's subject matter jurisdiction.

Section 1981 is a civil rights statute that protects the right to contract from any impairment due to non-governmental discrimination "under color of State law." 42 U.S.C. § 1981(c); *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 211 (4th Cir. 2007). Accordingly, § 1981 "does not . . . provide a remedy against federal officials." *Middlebrooks v. Leavitt*, 525 F.3d 341, 349 (4th Cir. 2008); *Howland v. U.S. Postal Service*, 209 F. Supp.2d 586, 591 (W.D. N.C. 2002) ("a federal worker cannot state a cause of action for employment discrimination under 42 U.S.C. § 1981") (citing *Brown v. Gen. Services Admin.*, 425 U.S. at 834 (§ 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, is the exclusive remedy for claims of discrimination in federal employment)). Similarly, § 1983 creates a remedy to redress a deprivation "under color of state law" and "does not apply to federal officers . . . unless they are acting under color of state law. Since there is no state action, not even colorable state action, [plaintiff's] grievances are not cognizable under 42 U.S.C. § 1983."[11] *Raether v. Phillips*, 401 F.

---

[10](...continued)
VHRA must file an administrative complaint with the Commissioner of Labor and Industry within sixty days of the alleged discrimination. *See* Virginia Code § 40.1-51.2:2. The Commissioner must then investigate and determine if there has been a violation of the VHRA. Only if the Commissioner refuses to bring a charge can a plaintiff file a suit. *See* Virginia Code § 40.1-51.2:2 (B). If a plaintiff does not satisfy the administrative claim requirements of the VHRA prior filing a law suit, that suit must be dismissed. *Bass .v E.I. duPont De Nemours & Co.*, 28 Fed. Appx. 201, 205 (4th Cir. 2002) (unpublished); *Reiterman v. Cosco Wholesale Mgt.*, 2005 WL 1800085 *4 (W.D. Va. 2005) (unpublished). Nowhere in his complaint does plaintiff state that he complied with the administrative claim prerequisite of the VHRA.

[11] A citizen who suffers injury to a constitutionally protected interest at the hands of federal officials may have a cognizable claim, called a "*Bivens* claim," against those officials in their individual capacities.

(continued...)

Supp. 1393, 1396 (W.D. Va. 1975) (postal employees filed action under various civil rights statutes, including 42 U.S.C. § 1983).

## H.

Count Twelve, alleging that defendant violated the Thirteenth Amendment to the U.S. Constitution, must be dismissed, as it fails on a facial basis to invoke this court's subject matter jurisdiction.

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const, amend. XIII, § 1. The Thirteenth Amendment abolished slavery and involuntary servitude and gave Congress the ability to determine the badges and incidents of slavery and to legislate against them. *See, e.g., Washington v. Finlay*, 664 F.2d 913, 927 (4th Cir. 1981); *U.S. v. Finnell*, 256 F. Supp. 2d 493, 498 (E.D. Va. 2003). Nothing in the complaint remotely suggests anything remotely resembling slavery or involuntary servitude, nor does the complaint provide any hint regarding how the Thirteenth Amendment might apply to his allegations of discrimination by defendant. Additionally, the Thirteenth Amendment proscribes conduct by private individuals or entities, not the federal government or its employee acting within the scope of a federal agency. *Baker v. McDonald's Corp.*, 686 F. Supp 1474, 1480 (S.D.

---

[11](...continued)

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). I note that, were plaintiff proceeding *pro se*, and I were to liberally construe these counts to allege *Bivens* claims, he could not bring the claims against the USPS as a government agency, because "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). In *Meyer*, the Supreme Court specifically held that *Bivens* jurisdiction could not be extended to encompass federal agencies. *Id*. at 484-86. Insofar as I might construe a *pro se* civil rights complaint that appeared to have merit to allege a *Bivens* claim against an individual (and assuming *arguendo* that plaintiff had asserted a civil rights claim that appeared to have merit), I observe that plaintiff is represented by counsel, and therefore is not entitled to the special solicitude a court extends to a *pro se* plaintiff. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

Fla. 1987).  Nor may a plaintiff "maintain a cause of action directly under the Thirteenth Amendment for employment discrimination."  *Id*. at 1480 n. 12 (citations omitted).  As previously mentioned, § 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, provides the exclusive remedy for claims of discrimination in federal employment.  *Brown v. Gen. Service Admin*., 425 U.S. at 834.

## I.

Count Nineteen alleges a promissory estoppel claim, and the second Count Twenty-Two alleges breach of an employment contract.  These counts must be dismissed for lack of subject matter jurisdiction.

As plaintiff alleges non-federal questions involving promissory estoppel and contract law, Virginia substantive law controls Count Nineteen and the second Count Twenty-Two.  *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 669 (E.D. Va. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995)).  A federal court must interpret state law "in accordance with the precedent of the state's highest court, earnestly attempting to reach the same result that court would if presented with the issue."  *Dvnew* at 670 (citation omitted).

Count Nineteen alleges promissory estoppel, which "is an equitable doctrine which generally is used to imply a contract where none exists," *Tuomala v. Regent University*, 252 Va. 368, 376 (1996), and "is not a cognizable cause of action in the Commonwealth. . . ."  *W.J. Schafer Associates, Inc. v. Cordant, Inc.*, 254 Va. 514, 521 (1997).

As for the second count Twenty-Two, assuming a contract was breached, plaintiff does not assert that he had an enforceable written personal employment contract with the postal service. "Under Virginia law, '[t]he essential elements of a cause of action for breach of contract are: (1)

a legal obligation of a defendant to the plaintiff ; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff.'" *Dodge v. CDW Government, Inc.*, 2009 WL 1605010 *3 (E.D. Va. 2009) (unpublished) (quoting *Albanese v. WCI Communities, Inc.*, 530 F. Supp. 2d 757, 760 (E.D. Va. 2007). And, assuming from the factual assertions that any personal employment contract relied on by plaintiff exceeded one year, it would have to be in writing and signed by the plaintiff and a defendant to comply with the Virginia Statute of Frauds. *See* Virginia Code §11-2; *Gitter v. Cardiac & Thoracic Surgical Assoc, Ltd.*, 338 Fed. Appx. 348, 2009 WL 2171273 (4th Cir. 2009) (unpublished). In the first instance, plaintiff shows no breach of a duty. Nor does the plaintiff allege the existence of a personal written legal obligation, and assuming *arguendo* that plaintiff and defendant were subject to national and local labor union agreements, such agreements do not constitute a personal obligation pursuant to which plaintiff can pursue claims under state contract law. Additionally, the United States has affirmatively *not* waived sovereign immunity for "[a]ny claim arising out of . . . interference with contract rights." *See* 28 U.S.C. § 2680(h).

## J.

Count Fourteen fails on its face to invoke the court's subject matter jurisdiction. Count Fourteen alleges that defendant breached "an implied covenant of good faith and fair dealing" in his employment contract. Like the claims in the previous section, this is a question of Virginia substantive law, which "is decidedly straightforward on this matter: the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts. . . ." *Devnew*, 396 F. Supp. 2d at 671 (citations omitted).

# IV.

In addition to filing the motion to dismiss, defendant moved for summary judgment on plaintiff's discrimination claims. Because the evidence before the court indicates that summary judgment is appropriate, I will grant the motion.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. "As to materiality. . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

Once a motion for summary judgment is properly made and supported, the non-moving party may not rely merely on allegations or denials in its own pleading; rather, it must set out "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "While courts must take special care when considering a motion for summary judgment in a discrimination case because

motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). "To establish a disparate-treatment claim under . . . the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___, ___, 129 S. Ct. 2343, 2350 (2009); *see also EEOC v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir. 1992) ("[i]n order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been [subjected to the alleged discrimination]"). In contrast, "Title VII . . . explicitly authoriz[es] discrimination claims in which an improper consideration was [merely] 'a motivating factor' for an adverse employment decision." *Gross*, ___ U.S. at ___, 129 S. Ct. at 2349 (citing 42 U.S .C. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice")). In either case, a plaintiff can make the required evidentiary showing by employing the *McDonnell Douglas* burden-shifting test. *See Clay Printing*, 955 F.2d at 940-41.

Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. To do so, a plaintiff must allege that he was: (1) a member of a protected class; (2) qualified for the job in question; (3) suffered an adverse employment action; and (4) the

existence of circumstances that give rise to an inference of unlawful discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If the plaintiff can establish a *prima facie* case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its challenged action. *See McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination. . . ." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citations omitted); *see also Burgoon v. Potter*, 369 F. Supp. 2d 789, 796 (E.D. Va. 2005).

Applying these standards, it is clear that plaintiff has failed to establish a *prima facie* case of either age or race discrimination. Specifically, plaintiff did not suffer any adverse employment action. An adverse employment action stems from an employer's conduct that materially alters the terms, conditions, or benefits of employment. *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001), *abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Holland v. Washington*, 487 F.3d 208, 219 (4th Cir. 2007) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An inquiry into the adverse nature of an employer's action ordinarily focuses on whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or decreased opportunities for promotion. *Boone*, 178 F.3d at 255 (assignment to wind tunnel, which plaintiff claimed was undesirable because of poor working conditions, was not an adverse employment action). "[D]ecisions having no immediate effect upon employment conditions . . . were not intended to fall within the direct proscription of [Title VII]." *Page v. Bolger*, 645 F.2d 227, 233

(4th Cir. 1981) (*en banc*).

Plaintiff alleges in his administrative complaint and in his complaint to this court that he suffered an adverse employment action in the instance when his desk and work station were relocated to a subjectively more uncomfortable location – he alleges that the new location was colder and more noisy than the previous location.  He adds that the relocation was performed while he was away, and that items were removed from to his desk and were not returned neatly.  The relocation of his desk and work station do not constitute adverse employment acts.  Indeed, liberally construing the factual plaintiff's factual allegation, absolutely nothing plaintiff complains of constitutes termination, demotion, a decrease in pay or benefits, a loss of job title or supervisory responsibility, or a decreased opportunity for promotion.  "Quite simply, assignment to an unwanted job duty without financial repercussions is not an adverse employment action," *Giliam v. Principi*, 2003 WL 2006844 *8 (M.D. N.C. April 28, 2003) (citation omitted), and assignment to less appealing work conditions is not an adverse employment action, *Boone*, 178 F.3d at 255-56 (adverse employment actions do not include "trivial discomforts endemic to employment").  *See also Page*, 645 F.2d at 233 (adverse employment actions do not include "interlocutory or mediate decisions having no immediate effect upon employment conditions").  Plaintiff suffered no adverse financial or employment consequences from the relocation.  The evidence indicates that his pay grade and duties with the postal service remain the same as before the relocation.  His own testimony that his new office location exposed him to "lonely," "cold," or "noisy" conditions, with the possibility that he "might" trip over boxes or equipment on the floor, are at best allegations that he was subjected to

less appealing work conditions, and do not constitute an adverse employment action.[12]

## V.

Accordingly, I will grant defendant's motions.[13]  An appropriate order accompanies this memorandum opinion.

ENTERED this ___25TH___ day of July, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[12] To the extent plaintiff suggests that he was subjected to "retaliation" or experienced a "hostile work environment," his claims likewise fail.

To establish a *prima facie* case of retaliation under either the ADEA or Title VII, plaintiff generally must show that he engaged in a protected activity, he suffered an adverse employment action, and some causal connection between the protected activity and the adverse action.  *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (ADEA); *E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (Title VII).  Assuming for the sake of argument that any of plaintiff's factual allegations showed that he suffered an adverse employment action, he has not shown that he engaged in any protected activity prior to his desk and work station being moved.

To establish a prima facie case of hostile work environment, the plaintiff must offer specific evidence that shows that (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, color or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  *Bass v. E.I. duPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citation omitted).  Here, as discussed above, plaintiff alleges no conduct that served to "alter the conditions of employment and create an abusive atmosphere."  Moreover, to the extent relocating plaintiff's desk could be perceived as altering the conditions of his employment, defendant has offered legitimate, non-discriminatory reasons for doing so, and plaintiff has not shown that those proffered reasons are simply a pretext for intentional discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *see also Wright-Thompson v. Potter*, 2010 WL 3294393 *3-4 (W.D. Va. August 20, 2010) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000)).

[13] To the extent plaintiff may have stated a valid state law claim subject to this court's supplemental jurisdiction, I decline, pursuant to 28 U.S.C. § 1367(c), to exercise such jurisdiction in this action.